UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION, _____ This document relates to: *Michael Skurow and Virginia Emily Skurow v. Procter and Gamble Pharmaceuticals, Inc., et al.*, No. 5-cv-379. | MDL NO. 1407 ORDER REGARDING MOTIONS FOR RECONSIDERATION, SUMMARY JUDGMENT, AND FOR THE COURT TO ACCEPT PLAINTIFFS' SUPPLEMENTAL RESPONSE WHEN CONSIDERING SUMMARY JUDGMENT MOTION |

I. INTRODUCTION

There are three motions pending before the court: (1) Defendant Elan Pharmaceuticals, Inc.'s ("Elan") motion for reconsideration of its motion to dismiss plaintiffs' amended complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure; (2) Defendants Procter & Gamble Pharmaceuticals, Inc.'s and The Procter & Gamble Company's (collectively "P&G") motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure; and (3) Plaintiffs' motion for the court to accept plaintiffs' response to the January 23, 2006 minute entry when considering P&G's

ORDER
Page - 1 -

summary judgment motion. Having considered the parties' briefs filed in support of and opposition to the motions, the court finds and rules as follows:

## II. BACKGROUND

According to the amended complaint plaintiff Michael Skurow allegedly ingested prescription medication containing phenylpropanolamine ("PPA") on March 25, 1998 and thereafter suffered a central retinal vein occlusion of the right eye. Plaintiff and his wife commenced this action in the Circuit Court of Orange County, Florida on November 15, 2004. The action was removed to the United States District Court for the Middle District of Florida, where motion practice resulted in the dismissal of plaintiffs' complaint with leave to amend. Thereafter, the complaint was amended and the matter was transferred to Multi-District Litigation 1407 and this court on March 8, 2005.

The amended complaint alleges direct claims of negligence and strict liability, and derivative loss of consortium claims. Specifically, plaintiffs aver that it had been well-documented for many years prior to Mr. Skurow's stroke that PPA use is associated with strokes, vascular injuries, and sudden elevations in blood pressure. Plaintiffs further allege that the United States Food & Drug Administration ("FDA") issued public health statements advising consumers not to use PPA-containing products. Plaintiffs claim that they did not discovered until the Spring of 2002 that Mr. Skurow's injury was caused by defendants'

ORDER
Page - 2 -

misconduct, when Mr. Skurow saw a lawyer's advertisement on television.

Defendant Elan filed a motion to dismiss and defendant P&G filed a motion for summary judgment. Both defendants contend that plaintiffs' claims were barred by the expiration of Florida's four-year statute of limitations. In addition, defendants contend that the fraud and concealment allegations in the amended complaint are not plead with particularity in accordance with Rule 9(b) and should be dismissed. Lastly, defendants asserted that plaintiff Virginia Skurow's allegations of lost consortium fail because they are derived from her husband's time-barred claims.

The court denied Elan's motion to dismiss, and Elan subsequently filed a motion for reconsideration alleging that the court incorrectly applied Florida law. Central to the motion for reconsideration is whether plaintiffs should have known of the risks associated with PPA on November 6, 2000, such that their claims filed on November 15, 2004 are time-barred. The court requested additional briefing on the specific issue of whether the FDA public health advisory issued on November 6, 2000 should have placed plaintiffs on notice that Mr. Skurow's stroke may have been associated with PPA.

Plaintiffs request that the court consider their supplemental response to the motion for reconsideration when considering P&G's summary judgment motion. P&G requests that the court strike plaintiff's supplemental response because it exceeds

ORDER
Page - 3 -

the scope of the court's January 23, 2006 Minute Entry and because the briefing on the motion for summary judgment is closed.

## III. DISCUSSION

A.  Motion for Reconsideration Standard

"Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." W.D. Wash. Loc. Rule C.R. 7(h)(1); *Stairmaster Sports/Medical Products, Inc. V. Pacific Fitness Corp.*, 916 F. Supp. 1049, 1054, 1057 (W.D. Wash. 1994).

B.  <u>An Issue of Material Fact Exists as to When Plaintiffs Should Have Discovered the Cause of Mr. Skurow's Injury</u>

Central to the motion for reconsideration is whether plaintiffs should have known of the risks associated with PPA on November 6, 2000, the date of the FDA public health advisory, thereby making their claims filed on November 15, 2004 untimely. Both defendants make essentially identical arguments, contending that plaintiffs failed to rebut the evidence presented that Mr. Skurow should have discovered, with the exercise of due diligence, the alleged cause of his stroke more than four years before plaintiffs filed suit.[1] Defendants assert that plaintiffs

---

[1] This evidence consisted of abstracts of television news stories broadcast by the major television networks, as well as

ORDER
Page - 4 -

did not raise a genuine issue of material fact as to their constructive knowledge. Therefore, according to defendants, the court should have ruled, as a matter of law, that plaintiffs' claims were time-barred.

Plaintiffs respond that Mr. Skurow's uncontradicted affidavits created the requisite issue of fact. The affidavits establish that: (1) Mr. Skurow was not aware of the relationship between PPA and strokes until the Spring of 2002; (2) he did not see the November 6, 2000 FDA health advisory or resulting media coverage; (3) he was not informed by his doctors that PPA may have caused his stroke; and (4) he did not receive notification from a manufacturer that PPA was a risk factor for strokes.

Plaintiffs also assert that this court cannot presume that the publicity surrounding the November 6, 2000 health advisory was sufficiently notorious to trigger Florida's statute of limitations. Such a determination, plaintiffs contend, requires a fact-intensive examination of the extent and reach of the publicity, as well as an inquiry into plaintiffs' circumstances. The court finds plaintiffs' argument persuasive.

In *O'Connor v. Boeing North America, Inc.*, 311 F.3d 1139 (9th Cir. 2002)[2] the Ninth Circuit considered the CERCLA and

---

news stories from CNN.com, and newspapers in central Florida and around the country, which reported the alleged link between PPA use and stroke on or before November 6, 2000.

[2]Plaintiffs cite *O'Connor* for the first time in their response to the September 23, 2006 Minute Entry. Plaintiffs request that the court consider their response when ruling on

ORDER
Page - 5 -

California statute of limitations, both of which contain a discovery rule identical to Florida's. The district court in *O'Connor* had granted summary judgment on the basis that extensive publicity about the carcinogenic nature of contaminants which were released by the defendant in plaintiffs' communities triggered constructive knowledge and the accrual of the discovery rule. *Id.* at 1145. The circuit court reversed stating that "this evaluation of the awareness in Plaintiffs' various communities of a specific fact or event was uniquely an issue for the jury to resolve." *Id.* at 1152. The court further stated:

> This determination required a fact-intensive examination of the geographic scope of the circulation of various publications, the level of saturation of each publication within the relevant communities, the frequency with which articles on the Rocketdyne facilities appeared in each publication, the prominence of those articles within the publication, and the likelihood that a reasonable person living in Plaintiffs' various communities at the same time as Plaintiffs would have read such articles. These are all factual questions unsuitable for summary judgment.

*Id.* (citing *Bibeau v. Pac. N.W. Research Found. Inc.*, 188 F.3d 1105, 1110 (9th Cir. 1999))(holding "litany of news reports and other public revelations" insufficient to sustain summary judgment on the basis of statute of limitations because of the factual nature of inquiry into plaintiff's exposure to articles, the educational level of plaintiff, and whether there was reason

---

P&G's summary judgment motion. P&G objects arguing that the response exceeds the scope of the minute entry. The court disagrees. The response cites relevant case law that is appropriate for this court to consider in ruling on the summary judgment motion.

ORDER
Page - 6 -

for concern about the effect of defendants' conduct on plaintiff's health).

The court finds that defendants' attempts to distinguish *O'Connor* and *Bibeau,* 188 F.3d at 1110 are unpersuasive. Before public knowledge can be imputed to plaintiffs in this case, a fact-intensive inquiry must be made as to the extent and nature of the PPA publicity. Important factors in this inquiry are the geographic scope of the publicity, the saturation level of the publicity, plaintiffs' potential exposure to the publicity, the education level of plaintiffs, and plaintiffs physical abilities. Such a fact-intensive inquiry is the domain of the jury.[3] *O'Connor*, 311 F.3d at 1152, *see also*, *Schetter v. Jordan*, 294 So.2d 130, 131 (Fla. 4th DCA 1974)(stating "when one, by the exercise of due diligence, should have discovered the cause [of his injury], is to be determined by the trier of fact and not by the court in a summary proceeding"); *Hart v. Hart*, 234 So.2d 393, 396 (Fla 1st DCA 1970)(holding that when plaintiff should have discovered defendant's deceit was a question of fact for the

---

[3] Defendants claim that plaintiffs "admitted" to being put on notice of their potential claims by the November 6, 2000 FDA health advisory. Defendants cite plaintiffs' opposition to P&G's motion to dismiss amended complaint in which plaintiffs state they "filed their claim on November 15, 20004, which was within the four years from the date on which the [FDA] issued its Public Health Advisory, advising the consuming public for the first time about the risks of PPA and hemorrhagic stroke." Pls.' Resp. At 8 (Docket No. 26). Defendants read too much into this statement. Plaintiffs state that they filed within four years of the FDA health advisory, they do not state that the date of the advisory is the trigger date for Florida's limitations period.

ORDER
Page - 7 -

jury).

Defendants assert that the court misconstrued Florida law when it held that the issue of when an individual is placed on constructive notice is an issue for the trier of fact and not a court in a summary proceeding.[4] Defendants cite several cases in which Florida courts ruled in summary proceedings that plaintiffs' claims were time-barred. However, these cases are factually distinct from the present case. For instance, in *Steiner v. Ciba-Geigy Corp.*, 364 So.2d 47 (Fla. 3d DCA 1978), *cert. denied*, 373 So.2d 46 (Fla. 1979) the facts established that plaintiff "confirmed for himself that there was a relationship between his [injury] and the [product he ingested]," *Steiner*, 364 So.2d at 50, and in *Byington v. A.H.Robins Co., Inc.*, 580 F. Supp. 1513 (S.D. Fla. 1984) plaintiff's doctor specifically expressed to plaintiff his suspicion that defendant's product caused plaintiff's injuries. *Byington*, 580 F. Supp. at 1516.[5] The

---

[4] Defendants make much of the fact that *Edwards v. Ford, 279 So.2d* 851 (Fla. 1973) was receded from in *Perez-Abreu, Zamora & De La Fe, P.A. v. Taracido*, 790 So.2d 1051 (Fla. 2001). However, the limited holding for which the court cited *Edwards* was not receded from and remains good law.

[5] Elan also cites *Nardone v. Reynolds*, 333 So.2d 25 (Fla. 1976), *Doe v. Cutter Biological*, 813 F. Supp. 1547 (M.D. Fla. 1993), and *University of Miami v. Bogorff*, 583 So.2d 1000 (Fla. 1991). In each of these cases the cause of plaintiffs' injuries was addressed in the medical records and/or by plaintiffs' physicians. The court imputed this knowledge to plaintiffs and determined each of their claims was time-barred. In the present case, the parties do not allege that Mr. Skurow's medical records and/or physicians linked his stroke to the PPA-containing products he ingested. To the contrary, Mr. Skurow claims that his

ORDER
Page – 8 –

record in the present case lacks such evidence. It is Mr. Skurow's uncontradicted statement that his doctors did not link PPA to his stroke. Nor has any evidence been presented to the court that such a link is contained in his medical records.[6]

C.  <u>The Fraud Allegations in the Amended Complaint Do Not Satisfy Rule 9(b)'s Particularity Requirement</u>[7]

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud...the circumstances constituting fraud...shall be stated with particularity." Fed.R.Civ.P. 9(b). Averments of fraud must be specific enough to give defendants notice of a particular misconduct they are charged with so they can defend against the charge. To that end, plaintiffs must plead facts as to time, place and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly bad acts, when they occurred and who engaged in them. *See*, *e.g.*, *Bosse v. Crowell Collier and*

---

physicians did not raise PPA as a possible cause of his stroke when he discussed the issue with them in 1998.

[6]There are other gaps in the record. For instance, the record is not clear as to plaintiffs' whereabouts on November 6, 2000 or thereafter, whether plaintiffs watch television or read the newspaper, or whether Mr. Skurow's physical injury affects his ability to watch television and read. The court is also unaware of plaintiffs' educational levels.

[7]It has come to the court's attention that it inadvertently failed to rule on Elan's request that the court dismiss the fraud allegations in the amended complaint pursuant to Rule 9(b) of the Federal Rule of Civil Procedures, as well as, its request that the court dismiss Mrs. Skurow's loss of consortium claims in the November 8, 2005 Order denying Elan's motion to dismiss.

ORDER
Page – 9 –

*MacMillan*, 565 F.2d 602, 611 (9th Cir. 1977)(explaining that mere conclusory allegations of fraud will not suffice under Rule 9(b), and that statements of time, place and nature of the alleged fraudulent activities will); *Monge v. Smyth*, 229 F.2d 361, 366 (9th Cir. 1956), *cert. denied, appeal dismissed*, 351 U.S. 976 (1956)(noting that fraud must be clearly alleged and that allegations in the form of conclusions of the pleader as to the existence of fraud are insufficient).

Plaintiffs admit that the amended complaint does not allege a "formal fraud count." *See* Plaintiffs' Resp. Sum. Judg. Mot., p. 6. The amended complaint states three counts—strict liability, negligence and loss of consortium. However, to the extent plaintiffs allege fraud and concealment, the averments do not satisfy Rule 9(b)'s "particularity" requirement. In paragraph 5 of the amended complaint, plaintiffs assert that the defendants' fraudulent misrepresentations, conspiracy and concealment of the facts would be "more specifically alleged below." However, plaintiffs fail to set forth any allegations anywhere in the amended complaint regarding fraud or other intentional conduct that would satisfy Rule 9(b). Plaintiffs have done nothing more than make conclusory and undifferentiated assertions that all defendants concealed information about the allegedly harmful affects of PPA. Accordingly, plaintiffs' fraud allegations are

dismissed with prejudice.[8]

D.  Mrs. Skurow's Loss of Consortium Claims

Defendants move to dismiss Mrs. Skurow's loss of consortium claims because they derive from Mr. Skurow's underlying allegations. As discussed above, Mr. Skurow's claims remain viable. As such, defendants' request to dismiss Mrs. Skurow's derivative claims is denied. *Rosenthal v. Rodriguez*, 750 So.2d 703, 704 (Fla. 3d DCA 2000).

## IV. CONCLUSION

1) Based on the foregoing, the court cannot determine, as a matter of law, that on November 6, 2000, plaintiffs had the requisite notice to trigger Florida's statute of limitations.

2) Elan has failed to show manifest error in the court's prior ruling, nor had Elan presented new facts or legal authority. Therefore, the motion for reconsideration is denied.

3) P&G has failed to demonstrate the absence of a genuine issue of material fact. Therefore, for the reasons discussed *supra*, P&G's motion for summary judgment is

---

[8] A motion to dismiss a claim pursuant to Rule 9(b) is the functional equivalent of a motion to dismiss under Rule 12(b)(6). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). Ordinarily such dismissals are without prejudice. *Id.* at 1108. However, plaintiffs did not seek relief to amend the complaint; moreover, plaintiffs have already had two opportunities to correct the pleading deficiency. Accordingly, the allegations are dismissed with prejudice.

ORDER
Page - 11 -

        denied.

4)    The fraud and concealment allegations are not plead with sufficient particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure and are therefore dismissed with prejudice.

5)    Mrs. Skurow's loss of consortium claims remain viable. Therefore, defendants' motions to dismiss her claims are denied.

6)    Plaintiffs' motion for this court to accept plaintiffs' supplemental response when considering P&G's summary judgment motion is granted.

DATED at Seattle, Washington this 16th day of May, 2006.

*/s/ Barbara J. Rothstein*
BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE